Booth, Judge,
delivered the opinion of the court:
The plaintiff in this case responded to a proposal issued by the United States Veterans’ Bureau, District No. 8, Chicago, Ill. The situation was this: The bureau wras occupying under a lease the seventh, eighth, and tenth floors of the Leiter Building, No. 14 East Congress Street, Chicago. A new location for the bureau had been acquired in the Butler Bros.’ Building, 301 Canal Street, Chicago, eleventh and twelfth floors. The bureau was under the imperative necessity of vacating the Leiter Building by July 1, 1922, and the proposal issued solicited bids for removing the bureau from the Leiter to the Butler Building. Plaintiff offered to perform the service for $3,100 and his bid was accepted. No formal contract, except as evidenced by the proposal, plaintiff’s bid and acceptance thereof, was executed by the parties. A purchase order was duly issued to the plaintiff on June 9, 1922. On June 14, 1922, the plaintiff, with all the necessary equipment and force of employees, appeared to commence the work, and, to their utter astonishment, were denied and refused the use of the freight elevators by the representative of the Leiter Building to transport the office furniture and supplies of the bureau from its quarters to the ground floor. It was and is an established custom in this and other large office buildings in the city of Chicago to make available to incoming and outgoing tenants the free use of the freight elevators. Whether in this instance the facility was denied the plaintiff solely because of the bureau’s departure from the building does not appear; at any rate, no reason was assigned for such conduct, and the exercise of the arbitrary conduct not only seriously discommoded the plaintiff, but put upon him an extra expense of such proportions that compliance with his agreement upon the accepted consideration would entail financial loss.
*403 At the close of the fifth day after performance of the contract began plaintiff placed before the authorized officers of tlie bureau the serious situation which confronted him. He had not been able to make sufficient progress, and the added expense forced upon him the contemplated necessity of seeking a cancellation of his contract. The authorized officers of the bureau, after investigation, realized the handicap the plaintiff was working under, and on June 20, 1922, authorized the plaintiff to proceed with the performance and incur the necessary extra expense entailed by the arbitrary refusal to use the freight elevators. The plaintiff, acting finally under the written authorization of June 20, 1922, did go forward with the moving, and did incur an actual extra expense of $1,671.52. This amount has not been paid him, and for this sum this suit is brought. The officers of the bureau made a careful audit of the extra expense claimed, and after reducing the amount to some extent approved an allowance for the amount herein claimed.
The defendant opposes a judgment, basing its contention upon an assertion that the extra expense incurred by the plaintiff was in legal effect a bonus; that having contracted to perform the service for the stipulated sum of $3,100 the plaintiff could only be relieved from his contract through the intervention of acts of God or the other inevitable events which excuse performance of a contract. We believe the contention untenable. Plaintiff is not claiming a bonus; he seeks not something for nothing. It is conceded that the officers of the bureau possessed authority to make a contract for the removal of the bureau’s effects from one place to another; and if such authority obtained in the first instance, how may it be denied that it did not continue to modify the agreement when mutually' unforeseen and unanticipated events occurred which rendered the performance of the original agreement an unconscionable bargain and hardship? Both parties to the agreement entered into it with an understanding that the usual and customary facilities for its performance were available, and when they subsequently discovered that an entirely different situation prevailed there was nothing in the way of meeting the changed conditions. What the officers of the bureau did was not to increase the *404 profits of the plaintiff or give him more than the original contract provided; they simply modified the contract to the extent of assuming the additional expense put on the plaintiff over and above the original contract price by an event the happening of which' neither party to the agreement contemplated when the contract was made, and one which both parties in the usual course of business of this character had a right to assume would not happen. It would be folly to conclude that the plaintiff would have agreed to remove the bureau for the amount stated in his contract if he had any reasonable ground to believe that he would have been required to carry by hand from the seventh, eighth, and tenth floors all the equipment and supplies of the bureau to the ground floor when a freight elevator was at hand and available for this transportation.
The contract in suit was made in view of an established usage and custom, one long prevalent; both parties to the agreement recognized its existence, and both were equally disconcerted by its refusal. The plaintiff could not go on with the performance of his contract when he faced an additional expense of more than 50 per cent of the price he had originally agreed to charge, an expense which others similarly-situated would not have had, and had no reasonable grounds to anticipate. The bureau realized that it had no right to> insist upon performance under the changed conditions, and expressly promised that if the plaintiff would proceed the bureau would see that he received reimbursement for the extra cost. The plaintiff did proceed under these conditions and under them only. It is not unusual to increase the consideration for a contractual obligation when in the course of performance unforeseen events radically change the relationship of the contracting parties, and by so doing controversy over the terms and conditions of the original contract, is obviated and set at rest. Cook v. Murphy, 70 Ill. 96; Hostetter v. Park, 181 U. S. 30, 40. By so doing, the increased consideration is not a bonus. The cases in this court cited in defendant’s brief are inapposite. Manifestly if the plaintiff was to be paid additional compensation by way of savings he w-as under contract to save in any event, the pay *405 ment would be a gratuity and without consideration. If the defendant received no benefit in return for payment of added sums, of course the sum to be paid is a bonus; but such is not the case here. The bureau was put to the necessity of removing within a certain period. It had to get out by July 1, 1922. The plaintiff agreed, for a stated sum, to remove all its effects in the usual and customary manner of making removals under the circumstances of the particular case. During the course of the removal the transaction developed into an extraordinary undertaking, one at no time within the contemplation of the parties, and inasmuch as the bureau liad not exhausted its authority to incur the expense of removal, assuredly nothing stood in its way of paying for the service rendered the full amount of the worth of said services.
Judgment for the plaintiff for $1,671.52. It is so ordered.
Moss, Judge; Graham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.